**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELIZABETH AIDA HASKELL; REGINALD ENTO; JEFFREY PATRICK LYONS, JR.; AAKASH DESAI, on behalf of themselves and others similarly situated, *Plaintiffs-Appellants*, | No. 10-15152 D.C. No. 3:09-cv-04779-CRB |
| v. | OPINION |
| KAMALA D. HARRIS, Attorney General; EVA STEINBERGER, Assistant Bureau Chief for DNA Programs, California Department of Justice, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted En Banc
December 9, 2013—San Francisco, California

Filed March 20, 2014

Before: Alex Kozinski, Chief Judge, Harry Pregerson, M.
Margaret McKeown, Raymond C. Fisher, Ronald M.
Gould, Richard A. Paez, Richard C. Tallman, Johnnie B.

Rawlinson, Milan D. Smith, Jr., N. Randy Smith and Paul
J. Watford, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Civil Rights

The en banc court affirmed the district court's denial of a preliminary injunction in a class action brought under 42 U.S.C. § 1983 in which plaintiffs challenged a California law that requires all persons arrested for or charged with any felony or attempted felony to submit DNA samples for inclusion in law enforcement databases.

The en banc court determined that plaintiffs' facial and as-applied challenges to the law turned on essentially the same question: Whether California's DNA collection scheme was constitutional as applied to *anyone* "arrested for, or charged with, a felony offense by California state or local officials."  The en banc court held that after *Maryland v. King*, 133 S. Ct. 1958 (2013), the answer to that question was clearly yes.  The en banc court held that the district court therefore did not abuse its discretion by denying a preliminary injunction that would apply to the entire class.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The en banc court declined plaintiffs' request to enter a preliminary injunction applicable only to a smaller class consisting of individuals arrested for certain felonies that were not, in plaintiffs' view, covered by *King*. The en banc court stated that if plaintiffs believed they were entitled to a preliminary injunction as to a smaller class, they were free to seek it from the district court and then seek review on appeal.

Concurring in the judgment, Judge M. Smith stated that he agreed that the district court properly denied the motion for a preliminary injunction, but wrote separately to emphasize that California's DNA collection law is materially indistinguishable from the Maryland law upheld in *King*. Judge M. Smith stated that because the last paragraph of the per curiam opinion vaguely implied that something of plaintiffs' lawsuit may survive *King*, he respectfully concurred only in the judgment.

---

## COUNSEL

Peter C. Meier, Paul Hastings LLP, San Francisco, California, Michael T. Risher, American Civil Liberties Union Foundation of Northern California, Inc., San Francisco, California (argued), for Plaintiffs-Appellants.

Kamala D. Harris, Attorney General, Douglas J. Woods, Senior Assistant Attorney General, Tamar Pachter, Supervising Deputy Attorney General, Enid A. Camps, Deputy Attorney General (argued), Daniel J. Powell, Deputy Attorney General, San Francisco, California, for Defendants-Appellees.

---

## OPINION

PER CURIAM:

California law requires that all persons arrested for or charged with any felony or attempted felony submit DNA samples for inclusion in law enforcement databases. Cal. Penal Code § 296(a)(2), (4). Plaintiffs brought a class action under 42 U.S.C. § 1983, alleging that the law is unconstitutional on its face and as applied to the certified class, which includes "[a]ll persons who are, or will be, compelled to submit to the search and seizure of their body tissue and DNA under California Penal Code § 296(a)(2)(C) solely by reason of the fact that they have been arrested for, or charged with, a felony offense by California state or local officials." The district court denied a motion for a preliminary injunction, *Haskell* v. *Brown*, 677 F. Supp. 2d 1187, 1189–90 (N.D. Cal. 2009), and plaintiffs appealed, 28 U.S.C. § 1292(a)(1).

A plaintiff seeking a preliminary injunction must demonstrate (1) a likelihood of success on the merits, (2) that he is likely to suffer irreparable harm in the absence of an injunction, (3) that the balance of equities favors his position and (4) that the injunction is in the public interest. *Winter* v. *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). *Winter* "requires the plaintiff to make a showing on all four prongs." *Alliance for the Wild Rockies* v. *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Here, the plaintiffs cannot show that they will likely succeed on the merits.

Plaintiffs' facial and as-applied challenges turn on essentially the same question: Is California's DNA collection scheme constitutional as applied to *anyone* "arrested for, or

charged with, a felony offense by California state or local officials?" After *Maryland* v. *King*, 133 S. Ct. 1958 (2013), the answer is clearly yes. Plaintiffs' counsel conceded as much at oral argument. Given that concession, plaintiffs cannot show that the district court abused its discretion in denying a preliminary injunction that would apply to the entire class. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131.

Plaintiffs ask us to enter a preliminary injunction applicable only to a smaller class consisting of individuals arrested for certain felonies that are not, in plaintiffs' view, covered by *Maryland* v. *King*. But we are a court of review, not first view: We are limited to deciding whether the district court abused its discretion in denying the injunction plaintiffs sought. *See Bull* v. *City & Cnty. of S.F.*, 595 F.3d 964, 967–68 (9th Cir. 2010) (en banc). If plaintiffs believe they're entitled to a preliminary injunction as to a smaller class, they are free to seek it from the district court and we will review it if and when it is presented to us.

**AFFIRMED.**

---

M. SMITH, Circuit Judge, concurring in the judgment:

I agree with the per curiam opinion that California's DNA collection law is clearly "constitutional as applied to *anyone* arrested for, or charged with, a felony offense by California state or local officials." Accordingly, I also agree that the district court properly denied Plaintiffs-Appellants' (Plaintiffs) motion for a preliminary injunction. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). I

write separately, however, to make clear what the per curiam opinion regrettably leaves unsaid. California's DNA collection law is materially indistinguishable from the Maryland law upheld in *Maryland v. King*, 133 S. Ct. 1958 (2013), and Plaintiffs' facial and as-applied challenges to California's law therefore fail. Because the last paragraph of the per curiam opinion vaguely implies that something of Plaintiffs' lawsuit may survive *King*, I respectfully concur only in the judgment.

## I.

Because the per curiam opinion does not describe the relevant factual and procedural background of this case, I do so here.

## A.

In 2004, California voters approved Proposition 69, which requires law enforcement to collect DNA samples from "any adult person arrested or charged with any felony offense . . . immediately following arrest, or during the booking . . . process or as soon as administratively practicable after arrest, but, in any case, prior to release on bail or pending trial or any physical release from confinement or custody." Cal. Penal Code §§ 296(a)(2)(C), 296.1(a)(1)(A). The law took effect on January 1, 2009. Officers typically collect the DNA sample from a buccal swab that is swept along an arrestee's inner cheek. An arrestee's failure to comply with the DNA collection is a misdemeanor. *Id.* § 298.1(a).

Once officers collect the DNA sample, it is sent to a state laboratory, which creates a DNA profile of the arrestee. The laboratory then uploads the DNA profile into the Combined

DNA Index System (CODIS), a nationwide collection of federal, state, and local DNA profiles.

Only law enforcement officials may access a DNA profile, and they may only use the DNA for identification purposes. *Id.* §§ 295.1(a), 299.5(f). Unauthorized access or disclosure is punishable under state law by imprisonment and a criminal fine. *Id.* § 299.5(i). Federal law imposes similar penalties for unauthorized use of, or access to, CODIS. *See* 42 U.S.C. §§ 14133(c), 14135e(c). An arrestee who is not ultimately convicted may ask the trial court to order the sample destroyed and the DNA profile expunged. Cal. Penal Code § 299(b).

**B.**

Plaintiffs in this case provided DNA samples in connection with their felony arrests, but they were never convicted of the crimes for which they were arrested. On October 7, 2009, Plaintiffs filed a complaint, on behalf of a putative class, asserting that California's DNA collection law is unconstitutional, both facially and as applied. On October 30, 2009, Plaintiffs moved for a preliminary injunction barring the application of the law to persons arrested for, but not convicted of, a felony offense. The district court denied Plaintiffs' motion for a preliminary injunction on December 23, 2009. Plaintiffs timely appealed.

**II.**

The Supreme Court's decision in *King* is fatal to Plaintiffs' claims. In *King*, the Court held that "[w]hen officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station

to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." 133 S. Ct. at 1980. The Court recognized that although other DNA-collection statutes "vary in their particulars, such as what charges require a DNA sample, their similarity means that this case implicates more than the specific Maryland law. At issue is a standard, expanding technology already in widespread use throughout the Nation." *Id.* at 1968.

Despite the clarity of the Supreme Court's holding, Plaintiffs argue that *King* does not apply to California's DNA collection law. But the purported distinctions that Plaintiffs identify are illusory.

**A.**

Plaintiffs first argue that *King* is distinguishable because Maryland's law applies only to burglaries, crimes of violence, and attempts at either, which the Supreme Court characterized as "serious crimes." *Id.* at 1967. By contrast, California's law applies to all felonies. *See* Cal. Penal Code § 296(a)(2)(C). Plaintiffs contend that this difference is significant, as the California law applies to more minor crimes in which DNA evidence will rarely be relevant, including "wobblers" that can be charged as either a misdemeanor or a felony.

This argument has no traction. The Maryland law's list of "serious crimes," *King*, 133 S. Ct. at 1967, does not differ significantly from the California law's limitation to adult felony arrestees. A felony is, of course, a serious crime. *See* Black's Law Dictionary 694 (9th ed. 2009) (defining felony

as "[a] serious crime usu[ally] punishable by imprisonment for more than one year or by death"). Indeed, in outlining the scope of its decision, the Supreme Court explained that "[b]oth federal and state courts have reached differing conclusions as to whether the Fourth Amendment prohibits the collection and analysis of a DNA sample from persons arrested, but not yet convicted, *on felony charges*." *King*, 133 S. Ct. at 1966 (emphasis added). The Court then stated that it "granted certiorari . . . to address the question." *Id.* When viewed against this broad language, Plaintiffs' attempt to limit *King* in this way is baseless.

More fundamentally, the Court's reasoning in *King* is not dependent on the seriousness of the crimes involved. In upholding Maryland's law, the Supreme Court defined the state's interest in obtaining DNA as "identifying [the arrestee] not only so that the proper name can be attached to his charges but also so that the criminal justice system can make informed decisions concerning pretrial custody." *King*, 133 S. Ct. at 1980. Under the Court's rationale, the magnitude of the state's interest does not necessarily depend on the seriousness of the crime of arrest. As the majority observed, "people detained for minor offenses can turn out to be the most devious and dangerous criminals." *Id.* at 1971 (quoting *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1520 (2012)) (internal alteration omitted).

The four dissenting Justices in *King* similarly recognized that there is no basis for limiting the Court's holding to certain enumerated crimes. Describing the breadth of the majority's reasoning, Justice Scalia explained in dissent that "[i]f one believes that DNA will 'identify' someone arrested for assault, he must believe that it will 'identify' someone arrested for a traffic offense." *King*, 133 S. Ct. at 1989

(Scalia, J., dissenting).  Justice Scalia thus reasoned that "[a]s an entirely predictable consequence of today's decision, your DNA can be taken and entered into a national DNA database if you are ever arrested, rightly or wrongly, and for whatever reason." *Id.*  He predicted that "[w]hen there comes before us the taking of DNA from an arrestee for a traffic violation, the Court will predictably (and quite rightly) say, 'We can find no significant difference between this case and *King*.'"  *Id.*

Thus, the California law's limitation to felony arrests is not meaningfully different from the Maryland law's restriction to certain "serious crimes."  In upholding the Maryland law, the Supreme Court identified the state's interest as identifying the arrestee as part of the booking process.  This state interest does not vary with the "seriousness" of the felony at issue.  Accordingly, Plaintiffs' first attempt to distinguish *King* fails.

**B.**

Plaintiffs next argue that California's law is distinguishable from the Maryland law approved in *King* because (1) it authorizes the collection of DNA from arrestees never charged with a crime; and (2) it allows police to analyze DNA samples without a judicial finding of probable cause.  But, under *King*, these differences are not constitutionally relevant.

Unlike California, Maryland does not process DNA samples until after suspects are arraigned.  *See King*, 133 S. Ct. at 1967.  Nevertheless, the Supreme Court in *King* repeatedly emphasized the permissibility of DNA collection from arrestees at booking, holding that "DNA is, like fingerprinting and photographing, a legitimate police booking

procedure that is reasonable under the Fourth Amendment." *Id.* at 1980. Indeed, the Court expressly held that "[i]n light of the context *of a valid arrest* supported by probable cause [the arrestee's] expectations of privacy were not offended by the minor intrusion of a brief swab of his cheeks." *Id.* (emphasis added).

In light of the Supreme Court's focus on the collection of DNA samples in connection with arrest and booking, Plaintiffs' argument that the filing of charges and a judicial probable-cause determination are conditions precedent to permissible DNA collection is unsupportable. Refusing to draw such a line makes good sense. The government's interest in identifying arrestees attaches "when an individual is brought into custody," *id.* at 1971, irrespective of whether the suspect is ultimately charged. For this reason, the Court explained that "[w]hen probable cause exists to remove an individual from the normal channels of society and hold him in legal custody, DNA identification plays a critical role in serving those interests." *Id.* The dissent likewise recognized that the majority's reasoning applies to all arrests, regardless of subsequent charging decisions. *See id.* at 1989 (Scalia, J., dissenting) ("As an entirely predictable consequence of today's decision, your DNA can be taken and entered into a national DNA database *if you are ever arrested*, rightly or wrongly, and for whatever reason." (emphasis added)). Plaintiffs' arguments to the contrary are unavailing.

## C.

Finally, Plaintiffs assert that California's law is distinguishable from Maryland's because California retains and uses DNA samples indefinitely even if a suspect is never charged or convicted. By contrast, Maryland automatically

expunges the DNA samples of every person it fails to convict. *See* Md. Pub. Safe Code Ann. § 2-504(d)(2). While Plaintiffs are correct that expungement of DNA samples is not automatic under California law, this distinction is not constitutionally relevant.

Even though California does not automatically expunge DNA samples, California law enables an arrestee to request expungement if no charges are filed, his case is dismissed, or he is found not guilty. Cal. Penal Code § 299(b). Plaintiffs counter that California will not, in practice, expunge DNA samples and profiles until after the relevant statute of limitations has expired. But Defendants-Appellees represent that the California Department of Justice interprets § 299 "to allow expungement as soon as the prosecuting attorney declines to press charges." Appellees' Supplemental Br. at 8 n.2. In view of this representation, there is strong reason to believe that the differences in expungement procedures between Maryland and California are not as great as Plaintiffs suggest.

In any event, the *King* Court did not view Maryland's expungement procedures as important to the constitutionality of Maryland's law. The Fourth Amendment search at issue is a buccal swab, and the "minor intrusion" that this "brief" procedure represents is not affected at all by the availability of expungement procedures. *King*, 133 S. Ct. at 1980. While the Supreme Court also analyzed whether the processing of the arrestee's DNA sample intruded on his privacy interests, it did not suggest that post-collection expungement procedures would affect the constitutional inquiry. *See id.* at 1979–80. And the dissent did not view the majority's holding as so limited. *See id.* at 1989 (Scalia, J., dissenting)

("Perhaps the construction of such a genetic panopticon is wise.").

## III.

The majority in *King* expressly recognized that its decision "implicates more than the specific Maryland law," *id.* at 1968, and the four dissenting Justices emphatically agreed. *See id.* at 1989 (Scalia, J., dissenting). After *King*, Plaintiffs' facial and as-applied challenges to California's DNA collection law are clearly without merit, and any amendment to Plaintiffs' complaint would be futile. This case is over, and the district court has no obligation to give the Plaintiffs an opportunity to amend their complaint. For the foregoing reasons, I respectfully concur only in the judgment.